## Case No. 12,117.

### RUGGLES v. EDDY et al.

[10 Blatchf. 52; 5 Fish. Pat. Cas. 581.] [1]

Circuit Court, N. D. New York. June 18, 1872.

PATENTS—ASSIGNMENT—EXTENDED TERM — EQUITABLE TITLE.

1. S., a patentee, assigned to R. all his interest in "the invention as secured to him by the patent," for the whole of the United States (reserving to J. the right to use the patent at a particular place, and to sell in particular territory the products of such use), the same to be held and enjoyed by R., for his own use and that of his representatives, "to the full end of the term for which said letters patent are or may be granted," as fully and entirely as the same would have been held and enjoyed by S., had the assignment not been made. This assignment was recorded in the patent office. Subsequently, the patent was extended to S., and he afterwards assigned to E. all his interest in the extension. E. went on to use the invention, and was sued by R., in equity, for infringement: *Held*, that the right to the extended term passed to R., the first assignee.

[Cited in Waterman v. Wallace, Case No. 17,261.]

2. The legal effect of the assignment to R. cannot be varied by parol evidence not showing mutual mistake.

3. The title of R., if regarded as an equitable title, is sufficient to enable him to sue E., in equity, E. having taken title after the assignment to R. was recorded.

4. But, semble, that R. took the legal title.

[This was a bill in equity by Horace M. Ruggles against Charles Eddy and others.]

[Final hearing on pleadings and proofs. Suit brought on letters patent for an "improvement in coal stoves," granted to Henry Stanley, January 4, 1845 [No. 3,876] and extended for seven years from January 4, 1859.] [2]

Horace M. Ruggles, for plaintiff.
Francis Rising, for defendants.

WOODRUFF, Circuit Judge. The complainant sues as the assignee of an invention of an improvement in coal stoves, for which letters patent were granted to Henry Stanley

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 10 Blatchf. 52, and the statement is from 5 Fish. Pat. Cas. 581.]
[2] [From 5 Fish. Pat. Cas. 581.]

on the 4th day of January, 1845, which letters patent were extended on the 24th day of December, 1858, for a further term of seven years. The defendants' answer and the proofs show, that the defendants, since the said extension, have used, and are using, the invention for which such letters patent and the extension thereof were granted, by the manufacture of stoves embracing the improvements which were the subject of the patent. On this point there is no dispute between the parties. The defendants justify their use of the said improvements by the facts, that the said extension of the letters patent was granted to the said Henry Stanley, the original patentee, and that, after such extension, all his right, title and interest in, under or by virtue of, the said extension of the said patent, have, through mesne assignments, come to them. On the other hand, the complainant insists, that, by virtue of the assignment made by the original patentee to one Henry J. Ruggles, who assigned to the complainant, the extension enured to the benefit of the complainant, and that, such assignments being duly recorded before such extension, no transfer of the extended patent could confer upon the defendants the right to use the said invention, or make or sell stoves embracing the patented improvements. The principal question, therefore, is, whether the assignment by the patentee to Henry J. Ruggles operated to vest in him the right to the invention for the term of the extension subsequently granted to the patentee.

The assignment to Henry J. Ruggles was made on the 18th day of May, 1853, in consideration of $4,750, and, after reciting the granting of the said letters patent, and certain other letters patent, it, in terms, assigns "all the right, title and interest which I" (the patentee) "have in the said inventions, or either of them, as secured to me by said letters patent, for, to and in the several states of the United States, except, I reserve the right for my brother, John P. E. Stanley, of Baltimore, to use any or all of the above patents in his foundry in Baltimore, but not elsewhere, and to sell the stoves which he makes from said patents, in Pennsylvania, and in the states south and west of Pennsylvania, and not elsewhere; the same to be held and used by the said Henry J. Ruggles, for his own use and behoof, and for the use and behoof of his legal representatives, to the full end of the term for which said letters patent are or may be granted, as fully and entirely as the same would have been held and enjoyed by me had this assignment and sale not have been made."

This assignment is of the invention, and not, in words, an assignment of the letters patent. The expression, "the said invention, as secured to me by said letters patent," is, probably, susceptible of two constructions—one, "the said invention described in the letters patent," the terms, "as secured by the letters patent," being employed to limit the grant to the precise invention secured by the patent; the other construction being, "the said invention, to the extent and according to the legal effect only of the letters patent," which might be deemed to limit the transfer to the term of the patent actually then granted. If there was nothing more in the assignment, indicating the intention of the parties, the last-named construction would, at least, be plausible. But when, in connection with a transfer of the invention, it was added, to be held and used by the assignee, for his own use, and for the use of his representatives, "to the full end of the term for which said letters patent are or may be granted," the intention to grant the whole right and interest of the inventor in the invention, within the specified territory, becomes conspicuous—not because the habendum clause enlarges the grant, but because it makes it more clear what the parties intended, namely, to assign the whole invention described in the patent.

I am not able to withdraw this case from the operation of the decision of the supreme court of the United States in Railroad Co. v. Trimble, 10 Wall. [77 U. S.] 367, 378, where, in all that is material to the effect of the instrument between the parties in this respect, the language of the assignment was identical with the assignment now in question; and the decision of that court in Nicholson Pavement Co. v. Jenkins (at the December term, 1871, now just closed) 14 Wall. [81 U. S.] 452, is in full affirmance of the other case. In the latter, the court says: "Manifestly, something more was intended to be assigned than the interest then secured by letters patent. The words, 'to the full end of the term for which the said letters patent are or may be granted,' necessarily import an intention to convey both a present and a future interest, and it would be a narrow rule of construction to say that they were designed to apply to a reissue merely, when the invention itself, by the very words of the assignment, is transferred." The legal effect of the instrument now in controversy is, therefore, not an open question. Those decisions conclude this court, if there otherwise seemed doubt respecting it.

Parol evidence was offered by the defendants, that there was no promise or agreement by the patentee that the assignment should convey the extension, if the patent should be extended; that the patentee did not intend to convey any interest "beyond that embraced in the life of the original patent;" that the patentee received from the assignee no consideration for the extended term; and that the patentee paid the expenses of procuring the extension of the patent. The decisions of the supreme court, above referred to, having settled the legal construction and effect of the assignment actually made, this evidence cannot be permitted to vary

or alter it. It shows no mutual mistake. The consideration actually acknowledged was $4,750, for what was assigned. The assignee, in the absence of proof of clear mistake, must be presumed to have paid that consideration for what the assignment, as matter of law, did convey. It is, probably true, that nothing was said, at the time, on the subject of an extension. Very probably, neither of the parties then knew that an extension ever would be granted; and all the above testimony is, therefore, quite consistent with the fact, that the patentee intended to transfer all his interest in the invention, for the specified territory. Certainly, it fails to show any intention, even in the mind of the patentee, to reserve to himself the advantage of an extension in respect to such territory, if an extension should be afterwards obtained.

To the suggestion, that a fraud was practiced upon the government in procuring an extension, if such extension could enure to the benefit of the assignee only, several observations are pertinent. No such effect was given to the procurement of the extension, in the cases cited, as would prevent the assignee taking the benefit of it. If there was any fraud, it does not lie with the patentee or his assigns, to allege his own fraud on the government, to avoid the effect of his prior assignment. And, finally, the assignment was not of the exclusive right for all the territory of the United States, but for a part only. The court cannot, upon the proofs, certainly know that the patentee had not an interest in extending the patent, in respect of the rights reserved to his brother in the assignment itself.

The objection, that the complainant cannot sue, in equity, for an infringement of the patent, because the defendants have, by their assignment from the patentee, obtained the legal title to the extension, has no foundation. In a court of equity, an equitable title is sufficient, as against the patentee and those claiming under him with notice of the complainant's rights, and that notice appears by the record of the complainant's title; and the case above first cited tends to show that, in fact, the complainant has the legal title.

If there be any apparent hardship in the condition of the defendants, they have no claim that is not, I think, fully met by one or both of the cases above cited, and no alternative remains but to decree an injunction and account, as prayed in the bill of complaint.

[NOTE. Motion was subsequently made by defendants for a rehearing. The motion being denied, they then moved for leave to amend their answer, and open the case, so as to contest the question of infringement. This motion was also denied. Case No. 12,118. Pursuant to an order of the court in this case, reference was had to a master. Exceptions were filed to the master's report, and the case sent back for further proof. Id. 12,116.]